UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANKIE M. TERRY,

       Plaintiff,

v.                                Case No:  2:16-cv-32-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## OPINION AND ORDER

Plaintiff Frankie M. Terry seeks judicial review of the denial of her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.    Issues on Appeal[1]

Plaintiff raises three issues on appeal: (1) whether Plaintiff's due process rights were violated or she was otherwise prejudiced by the Administrative Law Judge's (ALJ) alleged failure to adhere to the agency's Hearings, Appeals, and Litigation Law ("HALLEX") manual and properly proffer to Plaintiff the interrogatory responses of the medical expert ("ME") or permit Plaintiff to cross-examine the ME; (2) whether

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

the ALJ was required by the Appeals Council remand order to obtain the testimony of a ME; and (3) whether substantial evidence supports the ALJ's assessment of Plaintiff's Residual Functional Capacity ("RFC").

## II.   Procedural History and Summary of the ALJ's Decision

On August 5, 2009, Plaintiff filed applications for a period of DIB and SSI alleging that she became disabled and unable to work on January 1, 2007 due to her back disorder.   Tr. 240-41, 270.   The applications initially were denied on October 16, 2009 and upon reconsideration on March 30, 2010.   Tr. 188, 194.   Plaintiff requested and received a hearing before ALJ M. Dwight Evans on May 18, 2011, during which she was represented by an attorney.   Tr. 168.   Plaintiff appeared and testified at the hearing.   *Id.*   On August 31, 2011, the ALJ issued a decision finding Plaintiff not disabled from July 28, 2009 through the date of the decision.   Tr. 168-76.   Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was granted on March 27, 2013.   Tr. 183-85.   The Appeals Council remanded the case to the ALJ for further proceedings.   *Id.*   Plaintiff received a second hearing before ALJ Evans on November 6, 2013, during which she again was represented by an attorney.   Tr. 89.   Plaintiff and a vocational expert ("VE"), Jeffrey Barrett, testified at the hearing.   *Id.*

On May 2, 2014, the ALJ issued a decision finding Plaintiff not disabled from July 28, 2009 through the date of the decision.   Tr. 47.   At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 28, 2009.   Tr. 37.   At step two, the ALJ determined that Plaintiff has the following

severe impairments: degenerative disc disease, bulging disc of the lumbar and cervical spine, neck and back pain, status post cervical discectomy and fusion, status post left knee medial patella reefing procedure, left knee pain, migraines, affective disorder and cognitive disorder. *Id.* At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 38. The ALJ then determined that Plaintiff had the RFC to perform the full range of medium work as defined in 20 C.F.R § 416.967(c).[2] Tr. 39. Further, the ALJ found

> [Plaintiff] is able to continuously lift/carry up to 20 pounds and occasionally lift/carry [] 21 to 50 pounds. At one time, without interruption, [Plaintiff] can sit for 2 hours, stand 6 hour[s], and walk 4 hour[s]. In an 8-hour workday [Plaintiff] can sit for 6 hours, stand for 6 hours, and walk for 6 hours. [Plaintiff] can frequently use the bilateral upper extremities for reaching (overhead). [Plaintiff] can continuously use the bilateral upper extremities for reaching (all other directions), handling, fingering, feeling, pushing and pulling. She is left hand dominant. Use of the bilateral feet for operation of foot controls is continuously. [Plaintiff] can occasionally climb ladders or scaffolds. [Plaintiff] can continuously climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. [Plaintiff] can frequently tolerate exposure to unprotected height[s]. [Plaintiff] can continuously tolerate exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, dusts, odors, fumes and pulmonary irritants, extreme cold, extreme heat, and vibration. [Plaintiff] can tolerate exposure from very loud noise (jackhammer). [Plaintiff] is limited to simple, routine, repetitive tasks, or unskilled work. [Plaintiff] is able to perform work that requires frequent interaction with the public, co-workers, and supervisors.

---

[2] The regulations define medium work as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [it is determined] that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

*Id.* Next, the ALJ found that Plaintiff has no past relevant work. Tr. 45. Considering Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff can adjust successfully to other work that exists in significant numbers in the national economy. Tr. 46. As a result, the ALJ found that Plaintiff is not disabled. Tr. 47.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on November 16, 2015. Tr. 1-3. Accordingly, the May 2, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on January 19, 2016. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 15, 16.

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education,

and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence,

the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Lacina v. Comm'r,* 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir. 1971)).

### III.   Discussion

#### a. *Whether alleged violations of HALLEX were prejudicial to Plaintiff or denied Plaintiff her due process rights*

By a letter dated July 29, 2013, the ALJ sought the medical expert opinion of neurosurgeon Bruce G. Witkind, M.D., and requested him to review the evidence provided by the ALJ and complete a medical interrogatory regarding Plaintiff's physical ability to do work-related activities.   Tr. 1055.   The ALJ requested that Dr. Witkind provide the completed interrogatory and return the evidence "as soon as possible, *but not later than 10 days from the date of this letter.*"  *Id.* (emphasis added).   Dr. Witkind completed the medical interrogatory nearly three months later on October 18, 2013, less than three weeks before the administrative hearing.   Tr.

1056-73.   In evaluating Plaintiff's RFC, the ALJ considered Dr. Witkind's opinion and accorded it great weight, finding it was supported by the medical evidence as a whole, "including physical examinations and diagnostic objective testing results." Tr. 45.   The ALJ also noted "Dr. Witkind had the opportunity to review the entire medical record when making his opinion." *Id.*   Plaintiff contends that the ALJ violated the Social Security Administration's ("SSA") own regulations in the HALLEX manual by not properly proffering the interrogatory responses to Plaintiff or permitting Plaintiff to cross-examine the expert.   *See* Doc. 19 at 4-11.   Plaintiff argues these violations were prejudicial to her and violated her right to due process. *Id.*

Based on his review of Plaintiff's medical records, Dr. Witkind opined that Plaintiff may work full-time at a medium level of physical demands, although she was limited to light work for three months after C6-7 surgery on March 6, 2013.   Tr. 1061.   Dr. Witkind also found that no significant impairments are present, and all of Plaintiff's neurological and orthopedic exams are within normal limits.   Tr. 1063. As a result, Dr. Witkind concluded that Plaintiff's impairments, combined or separately, do not meet or equal any listings.   Tr. 1064.   The ALJ accorded great weight to Dr. Witkind's opinion, noting that:

> it is supported by the medical evidence as a whole including physical examinations and diagnostic objective testing results.   Furthermore, Dr. Witkind had the opportunity to review the entire medical record when making his opinion.   He noted [Plaintiff] has several normal neurological and orthopedic examinations and currently had no significant impairment present.   Consequently, the opinion is accepted. (Ex. 40F)

Tr. 45.

Plaintiff argues that it was error for the ALJ to accord great weight to Dr. Witkind's opinion not only because substantial evidence does not support Dr. Witkind's opinion[3] but also because the ALJ did not proffer this evidence to Plaintiff and denied Plaintiff's request to cross-examine Dr. Witkind. Doc. 19 at 4. Plaintiff asserts that the ALJ's failure to do so resulted in prejudice to her and denied her due process. *Id.*

In support, Plaintiff claims that the agency's own HALLEX manual § I-2-5-44 mandates the ALJ to proffer a copy of the ME's response to the interrogatories to the claimant or her appointed representative, allowing them to object to, comment on, or refute the proffered evidence. *Id.* at 5. Furthermore, Plaintiff argues that HALLEX § I-2-7-30 requires the ALJ to address any comments on the proffered evidence by issuing a formal ruling. *Id.* Plaintiff asserts that in *Ripley v. Astrue*, the court found that the ALJ erred because the ALJ did not advise plaintiff's counsel of the plaintiff's right to cross-examine the ME and thus violated the plaintiff's due process rights. No. 2:08-CV-947-Ftm-DNF, 2010 WL 1759554, at *7 (M.D. Fla. Apr. 30, 2010).

In addition, Plaintiff argues that her counsel did not have an opportunity to review Dr. Witkind's opinion because counsel did not receive any notification of Dr. Witkind's opinion being submitted as evidence. Doc. 19 at 8; Tr. 90-91. According

---

[3] The Court will examine this argument in addressing whether substantial evidence supports the ALJ's RFC findings.

to Plaintiff, although her counsel notified the ALJ during the hearing that counsel had no notice of Dr. Witkind's response to the interrogatories, the ALJ insisted that counsel had sufficient time and opportunity to review Dr. Witkind's response because Dr. Witkind rendered his response on October 18, 2013, two and one half weeks before the ALJ's hearing on November 6, 2013.   Doc. 19 at 8; Tr. 90-95, 1056-73.

Plaintiff further argues that the ALJ denied her right to cross-examine Dr. Witkind, and the denial was egregious because despite the inconsistency of Dr. Witkind's opinion with the evidence as a whole, the ALJ adopted his opinion.   Doc. 19 at 9-11.   Plaintiff asserts that because of the ALJ's denial, Plaintiff did not have a full and fair opportunity to fully develop her case.   *Id.* at 12.   In summary, Plaintiff claims that the ALJ's violated HALLEX by not proffering a copy of Dr. Witkind's opinion to her and denied her due process by not allowing her to cross-examine Dr. Witkind.   *Id.* at 5-6.

In response, the Commissioner argues that HALLEX has no legal force and is not binding on the Commissioner because it is not a regulation.   Doc. 24 at 4.   In support, the Commissioner asserts that other circuits have held that HALLEX creates no legally enforceable rights or that the claimant must show prejudice caused by the ALJ's noncompliance with HALLEX.   *Id.* at 5-7.   The Commissioner further asserts that in *Wells v. Commissioner of Social Security*, the Eleventh Circuit Court held that the Commissioner's Program Operations Manual Systems ("POMS"), publicly available operating instructions for processing Social Security claims, do not have the force of law because the POMS are not formal rules binding on the SSA.   *Id.*

at 7; 430 F. App'x 785, 786 (11th Cir. 2011).

Furthermore, the Commissioner argues that Plaintiff does not show any prejudice she suffered from the ALJ's noncompliance with the HALLEX rules.   Doc. 24 at 8.   The Commissioner also asserts that Plaintiff does not show the need to more fully develop the record or the ALJ's violation of her due process rights.   *Id.*   The Commissioner claims that to merit remand, Plaintiff must show prejudice before the Court finds that her due process rights are violated.   *Id.* at 8-9.   In addition, the Commissioner distinguishes this case from *Ripley*, the case on which Plaintiff relies to support her argument, because *Ripley* did not consider whether HALLEX has the force of law.   *Ripley*, 2010 WL 1759554, at *6-7; *Id.* at 8 n.4.   The Commissioner also argues that unlike here, in *Ripley*, the doctor's responses to the interrogatories were filed after the ALJ's hearing and were not submitted to the claimant.   Doc. 24 at 8 n.4; *Ripley,* 2010 WL 1759554, at *6-7.

First, the Court will address whether the ALJ was required to proffer the interrogatory responses of Dr. Witkind to Plaintiff, and, if so, whether he violated HALLEX by failing to do so.   Second, the Court will determine whether any such violation constitutes grounds for remand or whether Plaintiff's due process rights otherwise were violated.

"[HALLEX] is a policy manual written by the [SSA] to provide guidance on procedural matters."   *See Moore v. Apfel,* 216 F.3d 864, 868 (9th Cir. 2000), *cited in Warren v. Astrue*, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011); *Carroll v. Soc. Sec. Admin., Comm'r,* 453 F. App'x 889, 892 (11th Cir. 2011) (noting that HALLEX is "an

agency handbook for the SSA").   Although HALLEX gives guidelines for the ALJ's hearing process, the Eleventh Circuit "has not decided whether HALLEX carries the force of law." *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016); *see also George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) (assuming that HALLEX carries the force of law would be "a very big assumption").   Other circuit courts and district courts, including one in this district, however, have found that HALLEX does not.   *See, e.g., Moore*, 216 F.3d at 869; *Hall v. Comm'r of Soc. Sec.*, No. 2:05-cv-559-FtM-29SPC, 2007 WL 4981325, at *10 (M.D. Fla. Feb. 9, 2007) ("HALLEX like all administrative manuals lacks the legal authority to bind the ALJ").

Regardless, a mere showing that the agency failed to comply with HALLEX is not enough to merit remand; the claimant must show prejudice.   *McCabe*, 661 F. App'x at 599 (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)) ("even assuming (without deciding) that HALLEX carries the force of law and the agency failed to comply with it," the claimant must show that "she was prejudiced by this failure"); *Carroll*, 453 F. App'x at 892 (finding that "an agency's violation of its own governing rules must result in prejudice before [the court] will remand to the agency for compliance") (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)); *see also Weber v. Comm'r of Soc. Sec.,* No. 2:16-cv-25-FtM-CM, 2017 WL 727765, at *3 (M.D. Fla. Feb. 24, 2017).

HALLEX § I-2-5-44 states that when the ALJ "receives a [ME's] response to written interrogatories, the ALJ will proffer a copy of the responses using the

procedures in [HALLEX] manual [§] I-2-7-30."   HALLEX § I-2-5-44(A), 1994 WL

637377.   Furthermore, the ALJ

> must rule on any objection or request by the claimant regarding the
> ME's response to interrogatories.   The ALJ may rule on an objection on
> the record during the hearing or in a writing that the ALJ exhibits and
> associates with the record.   [The] ALJ must allow a claimant or
> appointed representative to propose additional interrogatories to the
> ME or request a supplemental hearing to question the ME, even if the
> claimant or appointed representative previously had the opportunity to
> do so.

HALLEX § I-2-5-44(B), 1994 WL 637377.   Section I-2-7-30, which sets forth the

proffer procedures, provides that the ALJ proffers evidence

> by sending a letter to the claimant and appointed representative, if any,
> that provides the following information:
>
> • A time limit to object to, comment on, or refute the proffered evidence,
> and to submit a written statement as to the facts and law that the
> claimant believes apply to the case in light of the evidence submitted;
> • A time limit to submit written questions to the author(s) of the
> proffered evidence;
> • When applicable (see HALLEX I-2-7-1), an opportunity to request a
> supplemental hearing, including the opportunity to cross-examine the
> author(s) of any posthearing evidence; and
> • The opportunity and instructions for requesting a subpoena for the
> attendance of witnesses or the submission of records.
>
> Hearing office (HO) staff will associate a copy of the proffer letter and a
> copy of the new evidence with the claim(s) file.

HALLEX § I-2-7-30(A), 1993 WL 643048.

Here, it would appear the ALJ violated HALLEX because he did not proffer a

copy of Dr. Witkind's responses using the procedures prescribed in HALLEX § I-2-7-

30.   The ALJ did not send a letter to Plaintiff or her counsel, providing the

information required under HALLEX § I-2-7-30(A).   During the hearing, Plaintiff's

counsel stated, "[no] notification [was] sent . . . to my office indicating that [Dr. Witkind's response] was submitted into . . . evidence like that." Tr. 91. Also, although the ALJ requested Dr. Witkind to return the completed interrogatory within ten days from the date of the letter requesting his response, Dr. Witkind completed the interrogatory nearly three months later. Tr. 1055-73. As noted, however, even if the ALJ did not comply with HALLEX, to merit remand, Plaintiff must show that she suffered prejudice from the ALJ's non-compliance. *McCabe*, 661 F. App'x at 599; *Carroll,* 453 F. App'x at 892.

Plaintiff's request to remand based on the ALJ's alleged denial of due process also requires a showing of prejudice. *Brown*, 44 F.3d at 935; *McCabe*, 661 F. App'x at 599. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Nevertheless, there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Brown*, 44 F.3d at 935. "[The] claimant cannot show prejudice by speculating that she would have benefitted from a more comprehensive hearing." *McCabe*, 661 F. App'x at 599 (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)). Instead, prejudice is shown when "the ALJ did not have all the relevant evidence before him or did not consider the evidence in reaching his decision." *Id.* (citing *Kelley*, 761 F.2d at 1540).

The Court finds that although the ALJ may well have violated HALLEX and

Plaintiff did not cross-examine Dr. Witkind, Plaintiff does not demonstrate prejudice to merit remand. Plaintiff argues that her additional interrogatories to and cross-examination of Dr. Witkind would have exposed the inconsistency of Dr. Witkind's opinion with certain of Plaintiff's medical records. Doc. 19 at 9-11. Plaintiff discusses specific medical evidence that she believes contradicts Dr. Witkind's opinion and provides her analysis of the evidence and Dr. Witkind's opinion to the Court. *Id.*

This argument, however, ignores the ALJ's explanation that he accorded great weight to Dr. Witkind's opinion because "the medical evidence as a whole including physical examinations and diagnostic objective testing results" supports Dr. Witkind's opinion. Tr. 45. In making his decision, the ALJ already considered and discussed the medical evidence that, according to Plaintiff, contradicts Dr. Witkind's opinion. Tr. 42. Specifically, Plaintiff points to the treatment notes from April 23, 2013 that the ALJ noted in assessing Plaintiff's RFC. Doc. 19 at 10; Tr. 42 ("In April 2013, she denied taking any pain medications . . . ."). The ALJ also noted Plaintiff's extensive medical records dated from 2009 to 2013, which Plaintiff discusses in her brief. Doc. 19 at 9-10; Tr. 40-45. Plaintiff raises other medical opinions that, as the Court discusses below in analyzing the ALJ's RFC findings, the ALJ considered and analyzed. Doc. 19 at 10. Despite considering all of the evidence that Plaintiff believes contradicts Dr. Witkind's opinion, the ALJ still decided to accord great weight to Dr. Witkind based on his review of "the medical evidence as a whole." Tr. 45.

Given the ALJ's explanation and Plaintiff's argument, even had Plaintiff submitted additional interrogatories and cross-examined Dr. Witkind, it is only speculative that Plaintiff's interrogatories and cross-examination would have overcome or affected the ALJ's analysis of "the medical evidence as a whole." *Id.*; *see* Doc. 24 at 9 ("Plaintiff can only speculate that further questioning of Dr. Witkind would result in evidence that would support her claim."); *see McCabe*, 661 F. App'x at 599. Furthermore, as noted, it is the function of the ALJ, and not the Court, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina,* 606 F. App'x at 525 (citing *Grant,* 445 F.2d at 656). The ALJ still properly exercised his discretion to analyze evidence even if, as Plaintiff suggests, the ALJ could have analyzed the medical evidence differently. *See id.* As a result, based on the analysis above, the Court finds that Plaintiff's arguments do not show prejudice to merit remand on the grounds of either the ALJ's violation of HALLEX or denial of due process. *McCabe*, 661 F. App'x at 599 ("[The] claimant cannot show prejudice by speculating that she would have benefitted from a more comprehensive hearing.").

In addition, the Court finds that the ALJ did not violate Plaintiff's due process rights by denying Plaintiff's cross-examination of the ME. As the Commissioner accurately points out, the facts of this case are most similar to the Eleventh Circuit's case of *Martz v. Commissioner, Social Security Administration,* rather than *Ripley* because similar to the ME in *Martz*, Dr. Witkind's response does not provide new medical findings and was submitted before the ALJ's hearing*. Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 962-63 (11th Cir. 2016) (finding that the plaintiff's

due process rights were not violated, although she did not cross-examine the ME); *cf.* *Ripley*, 2010 WL 1759554, at *6-7 (holding that the ALJ denied due process because he relied on post-hearing evidence in denying benefits to the plaintiff and did not allow the plaintiff to cross-examine the ME).

Like *Martz*, this case involves pre-hearing medical evidence because Dr. Witkind rendered his opinion before the hearing, and Plaintiff had six months in which to challenge and rebut Dr. Witkind's October 18, 2013 opinion before the ALJ issued his decision on May 2, 2014. Tr. 47, 1056-73; 649 F. App'x at 964; *cf. Ripley*, 2010 WL 1759554, at *6-7. Furthermore, like the ME in *Martz*, Dr. Witkind did not examine Plaintiff or make new medical findings but answered the interrogatories based on the evidence already available on the record and known to Plaintiff. *Martz,* 649 F. App'x at 964 n. 15; Tr. 1056-73.

Moreover, unlike in *Ripley*, the ALJ here did not substantially rely on Dr. Witkind's opinion in denying benefits to Plaintiff. *Ripley*, 2010 WL 1759554, at *7 ("The ALJ deprives a claimant of due process rights by not permitting the cross-examination of a post-hearing physician upon whose report the ALJ substantially relied upon in reaching his decision.") (citing *Demenech v. Sec'y of the Dep't of Health and Human Servs.*, 913 F.2d 882, 884-85 (11th Cir. 1990)). Although the ALJ accorded great weight to Dr. Witkind's opinion, the ALJ's decision was based on the entire evidence on the record, including Plaintiff's extensive medical records from 2007 to 2013. Tr. 40-45. Dr. Witkind's opinion only was a part of the ALJ's findings in assessing Plaintiff's RFC at step four. Tr. 45.

In addition, contrary to Plaintiff's assertion that the ALJ during the hearing stated, "he was not going to hold the record open post-hearing for [Plaintiff's representative to provide questions to Dr. Witkind about the opinion," the hearing transcript does not substantiate Plaintiff's assertion.   Tr. 91-101; Doc. 19 at 8. Instead, during the hearing, Plaintiff's counsel stated that he would like to submit additional interrogatories to Dr. Witkind because:

> ATTY: . . . I do believe I have an opportunity – or rather the right to ask [Dr. Witkind] questions of those interrogatories in clarifying the opinion. So, you know, that'll be my comment on the matter.
>
> . . .
>
> ALJ: Okay. Well, there . . . are a couple of . . . questions, of concerns –
>
> ATTY: Sure.
>
> ALJ: – regarding that. The . . . first concern is that these interrogatories have been . . . in the records since October 18th of 2013, and we're now, what is today, the 5th, the 6th of November 201[3].   Your company has, you know, real time direct access to look right into the system and see any and all records that exist within Social Security records.

Tr. 91.   The ALJ and Plaintiff's counsel continued discussing this issue, to state later:

> ATTY: – I only think it's unfair if we don't get an opportunity to clarify the portion of it. . . .   I think questions for the doctor would be appropriate.   And I mean I can point to the, either at this point or . . . at a later point in time the . . . major discrepancies in that report.
>
> ALJ: Well certainly you have the . . . right and to –
>
> ATTY: I mean and maybe you'll . . . understand my position more . . . clearly at that time why it is appropriate[,] why I guess it would be, you know, somewhat of . . . a rejection of an important point to . . . deny questioning of the doctor.

ALJ: Okay. Did you kind of understand my point?

. . .

Tr. 96-97.   The ALJ and Plaintiff's counsel concluded their discussion by stating:

ALJ: – nothing prevented review and scrutiny of the records.   All records, the updated records at that time, okay.   All right, hopefully you see my view –

ATTY: I hope that you see mine as well.

ALJ: – and I, and I – okay.

ATTY: Yeah, let's move on.

Tr. 101.

The review of the hearing transcript reveals that although Plaintiff's counsel made a request to submit additional interrogatories to Dr. Witkind, and the ALJ expressed his view in opposition to counsel's request, the ALJ did not issue a formal ruling denying counsel's request.   Tr. 91-101.   Rather, the ALJ and the counsel's discussion concluded by conceding their different views on whether Plaintiff's counsel should be able to submit additional interrogatories to Dr. Witkind.   *Id.*   The hearing record also shows that, as the Commissioner accurately points out, during the hearing, Plaintiff's counsel did not request a supplemental hearing or a cross-examination of Dr. Witkind.   Docs. 19 at 8; 24 at 9.   As a result, the ALJ did not issue any formal ruling precluding Plaintiff from submitting additional interrogatories to or cross-examining Dr. Witkind.   Tr. 94-101.   Although the undersigned observes that the hearing may have been "less than totally satisfactory," that fact alone, without prejudice, is not enough.   *McCabe*, 661 F. App'x at 600 (citing *Kelly*, 761 F.2d at 1540).

Furthermore, after the ALJ's hearing was concluded, Plaintiff does not set forth any evidence that she made a request for a supplemental hearing, additional interrogatories, or cross-examination of Dr. Witkind during the period of six months before the ALJ issued his decision.   Doc. 19 at 4-12.   Plaintiff does not explain why she could not have done so over the course of that time period and instead waited to raise this argument on appeal.   *Id.*   As a result, the Court finds that the ALJ did not violate Plaintiff's due process rights because the ALJ did not deny Plaintiff's opportunity to cross-examine or submit interrogatories to Dr. Witkind.   *Martz*, 649 F. App'x at 962-65.

Based on the discussion above, the Court finds that even if the ALJ erred by violating HALLEX and not allowing Plaintiff to submit additional interrogatories to and cross-examine Dr. Witkind, the error was not prejudicial.   *McCabe*, 661 F. App'x at 599.   The Court also finds that the ALJ did not violate Plaintiff's due process rights.   *Martz*, 649 F. App'x at 962-65.

> b. *Whether the ALJ was required by the Appeals Council's remand order to obtain the testimony of a ME*

On March 27, 2013, the Appeals Council remanded this matter to the ALJ for the resolution of several issues.   Tr. 183.   Specifically, the Appeals Council noted that:

> The hearing decision indicates [Plaintiff's] mental impairments are not severe. . . . However, [Plaintiff's] mental impairments appear to have previously met the listing level requirements for a mental impairment. The record reveals that [Plaintiff] was found disabled based on mental retardation with an established onset date of May 1, 1993.   [Plaintiff's] benefits were stopped in November of 1995 due to excess income from a spouse.   Although the current application/claim does not include any

> psychological testing, the evidence obtained in connection with [Plaintiff's] prior application dated February 19, 2008, reveals a full scale IQ score of 70.   The decision does not address [Plaintiff's] intellectual functioning nor does it contain rationale to explain whether [Plaintiff's] impairments meet or equal the requirements of Listing 12.05C.

*Id.*   On remand, the Appeals Council directed the ALJ to, among other things, "if necessary, obtain evidence from a [ME] to clarify the nature and severity of [Plaintiff's] mental impairments as well as whether the impairments meet or equal the requirements of any Listed impairment, including Listing 12.05C. . . ."   Tr. 184.

On remand, the ALJ discussed Plaintiff's mental impairments at step two. Tr. 38-39.   In discussing whether the severity of Plaintiff's mental impairments meet or medically equal Listings 12.02 and 12.04, the ALJ found that Plaintiff has moderate difficulties in the area of concentration, persistence or pace.   Tr. 38.   The ALJ noted that Plaintiff had difficulty with serial 3's testing and with recall.   *Id.* The ALJ also considered that Plaintiff had a second mental status examination according to which Plaintiff's thought processes were normal.   *Id.*   The ALJ added that Plaintiff "was administered the Wechsler Adult Intelligence Scale IV and obtained a full-scale IQ score of 73 placing her in the borderline range."   *Id.* Similarly, the ALJ considered Listing 12.05C and found that Plaintiff does not meet the criteria.   Tr. 39.   The ALJ noted that Plaintiff "does not have a valid IQ score of 60 to 70 and another impairment established prior to the age of 22."   *Id.*

Plaintiff argues that in determining whether Plaintiff's mental impairments meet or equal Listing 12.05C, the ALJ failed to assess whether her functioning is below the listing level.   Doc. 19 at 13.   Moreover, Plaintiff asserts that even if her

full scale IQ score is above the range required by the listing, the evidence shows her diminished intellectual functioning and adaptive functioning. *Id.* Plaintiff also argues that the ALJ did not comply with the Appeals Council's remand order by not obtaining a ME's testimony. *Id.* at 17-18. Lastly, Plaintiff claims that the SSA did not follow the proper procedures in terminating her benefits in 1995 because there was no medical evidence showing the improvement in Plaintiff's intellectual abilities. *Id.* at 19-20.

In response, the Commissioner argues that the Appeals Council's remand order does not mandate the ALJ to obtain a ME's testimony but allows the ALJ to obtain it "if necessary." Doc. 24 at 10. The Commissioner further asserts that Plaintiff did not satisfy her burden to prove that her impairments met Listing 12.05. *Id.* at 12-13. In addition, the Commissioner argues that substantial evidence supports the ALJ's findings regarding listings. *Id.* at 17.

The listings describe impairments that the Commissioner considers severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience." *See* 20 C.F.R. §416.925(a). If an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. . . ." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing *Bowen,* 482 U.S. at 141). The Eleventh Circuit has described how the standard is met:

> In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific

> criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient.

*Wilkinson ex rel. Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987) (citing 20 C.F.R. § 416.925(c)-(d)).   The burden of establishing that a claimant's impairments meet or equal a listing rests with the claimant, who must produce specific medical findings that satisfy all the criteria of a particular listing.   20 C.F.R. § 404.1520(a)(4).

The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings.   Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability.   It also contains four sets of criteria (paragraphs A through D).   If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (2014).   Listing 12.05 provides, in pertinent part, that a claimant is disabled if he or she meets the following criteria:

> 12.05 Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, *or* D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

. . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2014) (emphasis added).   Accordingly, in order to meet listing 12.05, "a claimant must at least[:] 1) have significantly subaverage general intellectual functioning; 2) have deficits in adaptive [functioning]; and 3) have manifested deficits in adaptive [functioning] before age 22."   *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2014). Additionally, a claimant must meet one of the four sets of criteria found in 12.05A, B, C, or D, in order to show that his or her impairments are severe enough to meet or equal listing 12.05.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (2014).

Relevant here, as noted above, paragraph C of listing 12.05 is met when the claimant shows: 1) "a valid verbal, performance, or full scale IQ of 60 through 70" and 2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."   *Id.* § 12.05C.   Generally, a claimant meets the criteria for presumptive disability under section 12.05C when the claimant satisfies two prongs: a valid I.Q. score of 60 to 70 inclusive; and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities.   *Lowery*, 979 F.2d at 837.   "It is settled, however, that the presence of a more than slight or minimal limiting impairment satisfies the second criteria of section 12.05C, even if the impairment is treatable." *Davis v. Shalala*, 985 F.2d 528, 262 n.3 (11th Cir. 1993).

Here, Plaintiff concedes that her full scale IQ score is 73 according to her most recent assessment, placing her three points above the range required by the listing.

Doc. 19 at 13; *Lowery*, 979 F.2d at 837.   Plaintiff argues, however, that despite her full scale IQ score, her IQ score could be well within the range required by the listing. Doc. 19 at 13.   Plaintiff's reliance on *Bellow v. Acting Commissioner of Social Security* to support her argument is unavailing.   605 F. App'x 917, 927 (11th Cir. 2015).   In *Bellow*, the court found that the plaintiff failed to meet his burden of proving he satisfied Listing 12.05C because, among other things, testing revealed plaintiff's full scale IQ score of 74 was in the borderline range, "as opposed to the required significantly subaverage general intellectual functioning" under Listing 12.05.   *Id.*

Plaintiff also asserts that the ALJ relied solely on her full scale IQ score to determine whether Plaintiff met Listing 12.05C.   Doc. 19 at 17.   On the contrary, the ALJ considered additional evidence in determining that Plaintiff's mental impairments do not meet Listing 12.05C.   *Id.* at 13, 17.   The ALJ's decision clearly states that the ALJ considered not only Plaintiff's IQ score but also the absence of "another impairment established prior to the age of 22."   Tr. 39.

Furthermore, the ALJ analyzed Plaintiff's mental impairments in detail to support his findings.   Tr. 38.   In addition to Plaintiff's full scale IQ score, the ALJ discussed that Plaintiff is able to do household chores, garden, drive, cook, care for animals, children, and others, do personal grooming and hygiene, and manage her own bills.   *Id.*   The ALJ further noted that although Plaintiff likes to keep to herself and not be around other people, she had no agoraphobic symptoms and appeared pleasant and cooperative to her physicians.   *Id.*   In addition, after finding that

Plaintiff's mental impairments do not meet Listings 12.02, 12.04, and 12.05C, the ALJ stated that he conducted a more detailed assessment of Plaintiff's mental impairments in evaluating Plaintiff's RFC, and concluded that the assessment supports his findings.   Tr. 39.

Nonetheless, Plaintiff argues that regardless of her full scale IQ score, the ALJ should have assessed whether her impairments are medically equivalent to Listing 12.05C because her academic skills, functional abilities, and work history show her significantly diminished intellectual and adaptive functioning.   Doc. 19 at 13-14.

The regulations provide three ways to determine medical equivalence:

> (1)(i) If you have an impairment that is described in the Listing . . . but—
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
>
> (2) If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.
>
> (3) If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical

significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(b).   If a claimant contends that an impairment equals a listing, she "must present evidence which describes how the impairment has such an equivalency." *Wilkinson*, 847 F.2d at 662.   "[Sh]e must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.   Moreover, a plaintiff cannot meet her burden "by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.*

The ALJ's discussion of Plaintiff's mental impairments is sufficient articulation necessary at step three.   Tr. 38-39.   As the Eleventh Circuit has held, "it is not required that the Secretary mechanically recite the evidence leading to her determination.   There may [even] be an implied finding that a claimant does not meet a listing." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (citing *Edwards v. Heckler,* 736 F.2d 625, 629 (11th Cir. 1984)).   In a case analogous to the instant case, the plaintiff argued that there was a strong possibility that her condition medically equaled a listing but the ALJ erred by not explaining his determination that the plaintiff's condition did not medically equal any listing.   *Johnson v. Barnhart*, 148 F. App'x 838, 841 (11th Cir. 2005).   The court held,

> [t]he ALJ explained the weight he accorded to certain pieces of evidence and stated that, based on all the record evidence, [the plaintiff's] condition did not medically or functionally equal a listed impairment. This statement is sufficient evidence that the ALJ considered (and rejected) a determination that [the plaintiff's] condition met Listing 103.03(B).

*Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)). Although an unpublished opinion is not binding on this Court, the Court finds *Johnson* persuasive in that it relies on Eleventh Circuit precedent. *Id.* (citing *Wilson*, 284 F.3d at 1224 for its holding that an ALJ's statement that "the medical evidence establishes that [the plaintiff] had [several injuries] which constitute a 'severe impairment,' but that he did not have an impairment or *combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4" was sufficient evidence that the ALJ considered the combined effects of the plaintiff's impairments).

Furthermore, based on a review of the record and the relevant authority, the Court finds that substantial evidence supports the ALJ's findings. Tr. 43-44. Plaintiff's first psychological evaluation in the record was on January 6, 2006. Tr. 339-43. Plaintiff underwent an evaluation due to her mood swings, which she reported having for one and a half years. Tr. 339. Plaintiff noted that she has initial insomnia, hypersomnia, increased appetite, and crying spells, and feels hopeless, helpless, withdrawn, and lethargic. Tr. 340. Plaintiff also had decreased concentration, memory disturbance, and anergia. *Id.* Plaintiff denied, however, having any hallucinations, delusions, suicidal ideations, cognitive disturbance, or anxiety. *Id.* She also reported that she has not tried any medications for her psychological problems. Tr. 341. Although Plaintiff was diagnosed with major depression, she exhibited normal appearance, sensorium, flow of thought, judgment,

and insight related to illness.   Tr. 342-43.   Plaintiff was recommended for psychological therapy and prescribed Wellbutrin.[4]   Tr. 343.

On January 9, 2012, Plaintiff received another mental evaluation.   Tr. 336-38.   She reported having sleep problems, low self-esteem, poor concentration, and depression, and feeling angry and resentful.   Tr. 337.   Plaintiff appeared depressed and exhibited poor insight and average to below average intelligence.   Tr. 338.   On the other hand, Plaintiff denied having any relevant treatment history and also was not on medication.   Tr. 337.   She had good orientation, good immediate, recent, and remote memory, and fair self-image and judgment.   Tr. 338.   She was cooperative and had logical thoughts.   *Id.*   Plaintiff was diagnosed with major depression and cyclothymic disorder.   *Id.*

On January 20, 2017, although Plaintiff appeared depressed, Plaintiff's psychological exam again was normal and unremarkable: she appeared neat, clean, and friendly, and had normal speech and organized thoughts.   Tr. 335.   She also denied having any hallucinations, delusions, or substance abuse, and had good insight and judgment.   *Id.*   The ALJ briefly discussed these records in evaluating Plaintiff's RFC.   Tr. 43.

On February 24, 2010, psychologist Maureen A. O'Harra, Ph.D., mentally evaluated Plaintiff on referral from the Division of Disability Determinations.   Tr. 512-14.   Dr. O'Harra noted that Plaintiff reported having mood swings and

---

[4]   Wellbutrin is an antidepressant medication.   Drugs.com, https://www.drugs.com/wellbutrin.html (last visited Feb. 21, 2017).

disproportionate angry verbal outbursts and not liking to be around people. *Id.* Plaintiff also noted that although she was diagnosed with major depression and received counseling for about three months in 2006, she was not happy with Wellbutrin and the counseling. *Id.* Dr. O'Harra recorded that Plaintiff's present symptoms at that time were irritability, hypersomnia, overeating, and racing thoughts. *Id.*

With regard to her background, Plaintiff reported that she attended special education classes in the fifth grade and still has problems with reading and writing. *Id.* Plaintiff stated that she failed her GED exam when she took it at the age of twenty-nine. *Id.* Dr. O'Harra noted that although Plaintiff last worked as a waitress for two months about eleven years ago and has only limited work experience, she did not attribute her failure to seek and maintain work to her depressive symptoms. Tr. 513.

Dr. O'Harra's evaluation did not reveal significant limitations in Plaintiff's ability to function or perform work-related activities. Tr. 513-14. Plaintiff was able to care for herself, sweep, vacuum, do the dishes, cook, garden, and drive. Tr. 513. Plaintiff also reported that she enjoys painting by numbers and watching her favorite TV shows. *Id.* Plaintiff further noted that she takes care of three pets and is able to complete what she starts. *Id.* She appeared straightforward and neither exaggerated nor underreported her symptoms. *Id.* Moreover, Plaintiff was cleanly and appropriately dressed and in good hygiene. *Id.* Dr. O'Harra noted that although Plaintiff appeared slowed down due to her migraine medication, "[t]here

was nothing remarkable about her gait or posture," and "[Plaintiff] appeared to hear well and responded without rambling."   *Id.*

Based on her findings, Dr. O'Harra opined that Plaintiff was mildly depressed, and Plaintiff's intelligence level was in the low average range.   *Id.*   Otherwise, Plaintiff's evaluation was normal: Plaintiff had good judgment based on a simple comprehension item, and although she could not "generalize verbally enough to interpret a proverb," Plaintiff could figure out simple similarities.   *Id.*   Plaintiff's thought processes were free of tangentiality, loose associations, or paranoid ideations, and she denied hallucinatory experiences.   *Id.*   Plaintiff was well oriented to time and place, performed serial three with only one error, and recalled two items after five minutes.   Tr. 514.   Dr. O'Harra also noted that Plaintiff is able to manage her own funds.   *Id.*   Dr. O'Harra diagnosed Plaintiff with pain disorder associated with both psychological factors and general medical condition and rule out learning disorder—not otherwise specified.   *Id.*   Plaintiff's GAF score was sixty-five (65).   *Id.*   In evaluating Plaintiff's RFC, the ALJ fully considered and discussed Dr. O'Harra's evaluation.   Tr. 43.

On March 29, 2010, J. Patrick Peterson, Ph.D., J.D., performed a psychiatric review technique of Plaintiff.   Tr. 515-28.   Dr. Peterson opined that Plaintiff's mental impairments do not satisfy Listings 12.04 and 12.05, although they meet Listing 12.08 because Plaintiff's inflexible and maladaptive personality traits cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by persistent disturbances of mood or affect.   Tr. 518-19, 522.

Specifically, Dr. Peterson noted that Plaintiff's medically present impairments do not satisfy the diagnostic criteria for Listing 12.05.   Tr. 519.   He found that Plaintiff has mild limitations in the areas of daily living, social functioning, and concentration, persistence, or pace, and has experienced no episodes of decompensation.   Tr. 525. Based on his evaluation, Dr. Peterson determined that Plaintiff's mental impairments are not severe.   Tr. 515.   In evaluating Plaintiff's RFC, the ALJ considered and accorded little weight to Dr. Peterson's opinion because the ALJ concluded that subsequent medical evidence supports findings of severe mental impairments and moderate limitation in maintaining concentration, persistence, or pace.   Tr. 44-45.   Although the ALJ accorded little weight to Dr. Peterson's opinion, his opinion bolsters the ALJ's determination that Plaintiff's mental impairments do not meet Listing 12.05C.   Tr. 39, 515-28.

On July 16, 2013, Kenneth A. Visser, Ph.D., evaluated Plaintiff as part of Plaintiff's disability determination.   Tr. 950-57.   Plaintiff reported that she has had depression for a long time, but had not been treated until about four years ago.   Tr. 951.   Plaintiff noted that because of her depression, she has difficulty relating to others, tends to isolate, becomes anxious, and is sometimes reactive with people.   *Id.* Dr. Visser noted that Plaintiff had learning problems, was in special classes, and stopped attending school in the ninth grade.   *Id.*   In the area of daily activities, Plaintiff reported that she is able to perform grooming, bath daily, care for others, see a doctor when needed, manage her own bills, and monitor her own medication. *Id.*

Plaintiff noted that she is very limited in lifting, bending, and doing meaningful activities and is limited in doing grocery shopping due to pain and depression. *Id.* She also reported having some limitations due to pain in cooking for herself and doing laundry. *Id.* Plaintiff indicated that her ability to organize the day is affected by her depression and pain, and she is capable of putting on and tying her shoes, but finds it painful. *Id.* Furthermore, Plaintiff noted that she is limited in regularly exercising and has problem relaxing. *Id.*

Next, Dr. Visser recorded that Plaintiff had depressed demeanor and difficulty making eye contact. Tr. 952. Plaintiff's affect was anxious and constricted, and Plaintiff had problems describing her mood and reported seeing herself worthless. *Id.* Plaintiff also noted that she worries much of the time and has had occasional panic attacks. Tr. 953. Plaintiff reported, however, that she is able to go to stores and denied having any suicidal or homicidal ideations. *Id.* Furthermore, during the interview, Plaintiff remained seated and became more relaxed and expressive as the interview progressed. Tr. 952. Plaintiff's speech was clear and easily understood, although her vocabulary was somewhat limited. *Id.* Plaintiff also had normal thought processes as she stayed focused on the questions asked and responded appropriately. *Id.* Plaintiff denied having any auditory or visual hallucinations, delusions of persecution, or grandiosity. Tr. 953.

Dr. Visser administered various tests and evaluations. Tr. 953-56. Plaintiff's cognitive evaluation showed that her cognitive functioning generally is below average, although she was "6/4 near average" with the digit span forward and

backward task.   Tr. 953.   Plaintiff also was oriented in all spheres and alert.   *Id.* In addition, Dr. Visser administered the Wechsler Adult Intelligence Scale IV to evaluate Plaintiff's level of intellectual functioning.   Tr. 953-54.   The test revealed that Plaintiff is in the borderline range for all areas of intellectual functioning, except that her processing speed is in the low average range.   Tr. 954.   Plaintiff's full scale IQ score was 73.   *Id.*

Based on the tests, Dr. Visser opined that Plaintiff's general cognitive ability, verbal comprehension and perceptual reasoning abilities, and ability to sustain attention, concentrate, and exert mental control are in the borderline range.   Tr. 955.   Dr. Visser also noted that Plaintiff's ability to process simple or routine visual materials without making errors is in the low average range compared to her peers. *Id.*   Furthermore, Plaintiff's reading ability was very weak.   *Id.*   As a result, Dr. Visser diagnosed Plaintiff with dysthymic disorder – low self-esteem, hopelessness, fatigue, adjustment disorder with anxiety and disorder, cognitive disorder not otherwise specified, and reading disorder.   *Id.*   Dr. Visser concluded that Plaintiff has limited intellectual functioning and poor reading skills and suffers from low self-esteem.   Tr. 957.   He also indicated that her prognosis is "very guarded" because her emotional problems have existed for a long time.   *Id.*

Dr. Visser, however, opined that Plaintiff is capable of hearing/listening, speaking, traveling, and following simple instructions.   Tr. 956-57.   Furthermore, although Dr. Visser determined that Plaintiff has limitations such as limited functioning in understanding and limited confidence in her ability to adapt, he did

not note that any of her limitations are significant.   Tr. 957.   In addition, Dr. Visser concluded that Plaintiff has the ability to interact with people, although her anxiety can interfere with her ability to function socially.   *Id.*   He also opined that Plaintiff is capable of managing her finances despite having a limited ability to handle work pressure due to her low self-esteem, anxiety, and pain level.   *Id.*   The only restriction that Plaintiff reported having in daily living was doing her activities much more slowly and carefully in order not to injure herself and to stay within her capabilities.   *Id.*   The ALJ considered and accorded great weight to Dr. Visser's opinion in evaluating Plaintiff's RFC.   Tr. 43-45.

On July 20, 2013, A. Neil Johnson, M.D., performed a medical evaluation of Plaintiff.   Tr. 960-69.   Dr. Johnson opined that Plaintiff has an eighth grade education and can subtract from 7 from 100, but could not multiple 8 times 9 or divide 100 by 20.   Tr. 963.   In evaluating Plaintiff's RFC, the ALJ discussed Dr. Johnson's physical examination of Plaintiff, implying his consideration of Dr. Johnson's finding regarding Plaintiff's mental impairments.   Tr. 45; *see also Dyer*, 395 F.3d at 1211 (holding that the court has "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not long enough to enable [the court] to conclude that [the ALJ] considered her medical conditions as a whole.'").   Even if the ALJ committed an error by not considering Dr. Johnson's finding regarding Plaintiff's intellectual ability, it would not have affected the ALJ's ultimate decision because Dr. Johnson, as a doctor of internal medicine, performed a physical, not psychological, evaluation of Plaintiff.

Tr. 960-67; *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citation omitted) ("To the extent that an [ALJ] commits an error, the error is harmless if it did not affect the judge's ultimate determination.").

Lastly, according to Plaintiff, she testified during the hearing before the ALJ regarding her mental impairments, such as that she was in an alternative school up to the eighth grade and had learning problems while in school.   Doc. 19 at 16; Tr. 61, 106.   The ALJ, however, discussed Plaintiff's relevant history of employment and education and her capability to do daily activities in analyzing Dr. O'Harra's and Visser's opinions.   Tr. 43-44, 512-13, 951, 956-57.   Plaintiff's testimony regarding her limitations, such as her limited cognitive ability and limited memory, also overlaps with the findings contained in Drs. O'Harra's and Visser's evaluations, which the ALJ considered.   Tr. 43-44, 512-14, 950-57.

Furthermore, the ALJ discussed Plaintiff's testimony that Plaintiff "admitted to not reading well and needing help filling out paperwork.   [Plaintiff] reported having mood swings and anger but not as bad as it was in the past," and Plaintiff "completed the 7th grade and alleged difficulty with reading, writing, and spelling." Tr. 40.   As a result, the only evidence that Plaintiff presents and the ALJ did not explicitly include in his decision is the vocational evaluation of Clint DeLong, M.A. Doc. 19 at 15.   The Court will discuss this evidence in addressing Plaintiff's argument regarding the ALJ's RFC finding.

To the extent that the ALJ did not obtain additional evidence from a ME to clarify whether Plaintiff's mental impairments meet Listing 12.05C, the Court finds

that the Appeals Council's remand order did not require the ALJ to do so.   Tr. 184;

Doc. 19 at 18.   As the Commissioner points out, the remand order allowed the ALJ

to obtain evidence from a ME "if necessary."   Tr. 184.

Lastly, Plaintiff's argument that the SSA improperly terminated Plaintiff's

social security benefits in 1995 is without merit.   Doc. 19 at 19.   The Commissioner

accurately argues that Plaintiff does not show how her prior receipt of benefits is

relevant to this case, and the evidence related to her prior benefits is not in this

matter's record.   Doc. 24 at 16.   Even Plaintiff acknowledges that "the ALJ here was

not the one who terminated [Plaintiff's] benefits."   Doc. 19 at 20.   As a result, based

on the above analysis, the Court finds substantial evidence supports the ALJ's

determination that Plaintiff's mental impairments do not meet or equal Listing

12.05C.   Tr. 39.

### c.   *Whether substantial evidence supports the ALJ's RFC findings*

Plaintiff argues that the ALJ's RFC determination is not supported by

substantial evidence, and the ALJ improperly reduced the weight accorded to certain

medical evidence.   Doc. 19 at 21-24.   Specifically, Plaintiff claims that the ALJ

erred by according great weight to Dr. Witkind's opinion and little weight to the

opinions of Dr. Johnson and David Guttman, M.D.   *Id.*   Plaintiff also asserts that

the ALJ should have considered Clint DeLong's vocational evaluation.   *Id.* at 24.

The Commissioner asserts that the ALJ properly analyzed the relevant evidence, and

substantial evidence supports the ALJ's RFC findings.   Doc. 24 at 17-21.

On February 5, 2010, Dr. Guttman, a state agency medical consultant, performed a physical RFC assessment of Plaintiff.   Tr. 497-503.   He opined that Plaintiff can lift and/or carry occasionally up to 20 pounds and frequently up to 10 pounds, stand and/or walk for a total of about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, and push and/or pull unlimitedly.   Tr. 497.   Dr. Guttman noted, however, that Plaintiff has no postural, manipulative, visual, communicative, or environmental limitations.   Tr. 498-500.   The ALJ accorded little weight to Dr. Guttman's opinion because "another opinion is more consistent and better supported by the medical evidence of record."   Tr. 45. Furthermore, the ALJ noted that Dr. Guttman did not examine Plaintiff.   *Id.*

On July 20, 2013, Dr. Johnson examined Plaintiff for a medical evaluation. Tr. 960-67.   The ALJ discussed Dr. Johnson's evaluation that:

> [Plaintiff] was pleasant and cooperative throughout the examination. She walked normally without the use of an assistive device.   She had mild difficulty tandem walking and severe difficulty squatting.   She had to hold on to the table.   [Plaintiff was] obese. . . . She had decreased range of motion of the cervical spine with discomfort.   She had discomfort on motion of the back and left knee.   There is mild crepitus of the left knee.   There is moderate tenderness to palpation at the area of the cervical spine and mild tenderness at the lumbar spine.   There were no spasms.   Straight leg raising was negative.   She can button, pick up a coin, and open a door.   Full use of the hands is noted.   Range of motion was slightly decreased in the left knee.   Range of motion was normal in the lumbar spine.   Motor strength is 5/5.   Sensation is intact.   There was no evidence of radiculopathy.   There is no evidence of nerve root irritation.   She was assessed with status post cervical fusion, low back pain, left knee pain, depression and learning disability. (Ex. 38F)

Tr. 43, 960-63.

Based on his examination, Dr. Johnson opined that Plaintiff can lift and/or carry only occasionally up to 10 pounds, and sit for 15 minutes, stand for 5 minutes, and walk for 10 minutes at one time without interruption.   Tr. 964-65.   Dr. Johnson also determined that Plaintiff can sit for a total of 6 hours, stand for a total of two hours, and walk for a total of two hours in an 8-hour workday.   Tr. 965.   He noted, however, that Plaintiff does not require the use of a cane to ambulate.   *Id.*   Dr. Johnson also noted that Plaintiff can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.   Tr. 967.   At the end of his report, Dr. Johnson concluded that Plaintiff can perform activities like shopping; traveling without a companion for assistance; ambulating without using a wheelchair, walker, or 2 canes or 2 crutches; using standard public transportation; climbing a few steps at a reasonable pace with the use of a single hand rail; preparing a simple meal and feeding herself; caring for her personal hygiene; and sorting, handling, or using paper/files.   Tr. 969.   The ALJ considered and accorded little weight to Dr. Johnson's opinion because the opinion is not consistent with or supported by the medical evidence as a whole, and his own examination of Plaintiff revealed minimal abnormalities.   Tr. 45.

The RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20

C.F.R. § 404.1545(a).   The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

With regard to Dr. Guttman's opinion, Plaintiff argues that the ALJ erred by relying on another medical opinion over Dr. Guttman's opinion, and the ALJ's findings are not supported by substantial evidence.   Doc. 19 at 22.   The ALJ, however, "may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (citation omitted); *Lacina*, 606 F. App'x at 526.   As noted, it is "solely the province of the Commissioner to resolve conflicts in the evidence and assess the credibility of witnesses."   *Lacina*, 606 F. App'x at 525 (alteration in original) (internal quotation marks omitted). Accordingly, the Court will not overturn the ALJ's decision simply because another conflicting medical opinion exists, and the ALJ resolved the conflicts in the medical opinions on the record.   *See id.*

On the other hand, the ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor."   *Sharfarz*, 825 F.2d at 279 (citation omitted).   If the ALJ's articulated reasons for assigning limited weight to physicians' opinions are supported by substantial evidence, "there is no

reversible error." *Hunter*, 609 F. App'x at 558 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Plaintiff, however, does not present sufficient evidence to show that the ALJ committed a reversible error.   Doc. 19 at 22.   Plaintiff provides only two medical opinions she claims do not support the ALJ's findings, those of Dr. Guttman and Dr. Johnson, both of which the ALJ considered and discussed in assessing Plaintiff's RFC. *Id.* at 21; Tr. 42-43, 45.   Even these opinions do not unilaterally contradict the ALJ's findings because they contain conflicting findings.   Dr. Guttman opined that Plaintiff has no postural, manipulative, visual, communicative, or environmental limitations, although she can perform only light work.   Tr. 498-500.   Plaintiff's neurological examination by Dr. Johnson was normal as she had intact sensation, full motor strength, symmetrical reflexes, and no disorientation.   Tr. 962.   The Court will not overturn the ALJ's findings based on conflicting medical opinions because, as noted, it is the function of the ALJ, not the Court, to weigh and assess conflicting medical evidence.   *Lacina*, 606 F. App'x at 525.   Likewise, the Court rejects Plaintiff's argument that substantial evidence does not support the ALJ's according great weight to Dr. Witkind's opinion because this argument is based on similar grounds.   Doc. 19 at 21, 23-24.

The Court also finds that Plaintiff's argument regarding Dr. Johnson's opinion does not present enough evidentiary or legal ground to overturn the ALJ's findings. Doc. 19 at 22-23.   Plaintiff argues that the ALJ erred because the records from 2010 to 2013 establish Plaintiff's significant ongoing symptoms in her neck, lower back,

and left knee even after undergoing physical therapy, injections, and surgeries.   Doc. 19 at 23.   The ALJ, however, did not deny that these symptoms are severe; in fact, the ALJ determined that Plaintiff's degenerative disc disease and bulging disc of the lumbar and cervical spine, neck and back pain, and left knee pain are severe impairments and could reasonably be expected to cause the alleged symptoms.   Tr. 37, 40.   Even Plaintiff does not argue that the ALJ did not consider these symptoms and their alleged symptoms.   Doc. 19 at 23.   Rather, Plaintiff argues that the ALJ's discussion of the evidence does not support his decision to accord little weight to Dr. Johnson's opinion.   *Id.*   Plaintiff asserts that the ALJ insufficiently explained how her alleged symptoms were inconsistent with Dr. Johnson's opinion.   *Id.*

Contrary to Plaintiff's arguments, the Court finds that the ALJ fully and sufficiently discussed relevant evidence that supports his RFC findings.   Tr. 41-43. In assessing the credibility of Plaintiff's statements, the ALJ discussed at length and in detail the relevant medical evidence dated from 2007 to 2013.   Tr. 41-43.   In fact, the ALJ noted not only Plaintiff's ongoing symptoms but also her conflicting physical examinations and reports of improvement.   *Id.*   For example, the ALJ stated that Plaintiff "had ongoing complaints of neck and back pain," "[e]xamination revealed decreased range of motion in the cervical and lumbar spine," and "the injections did not help [Plaintiff]."   Tr. 42, 692, 694, 702.   Despite her complaints of pain, the ALJ noted that after undergoing surgery, Plaintiff's left knee had a full range of motion and Plaintiff was doing much better and continued to make improvement.   Tr. 42, 698-99.   The ALJ also indicated that in March 2013, Plaintiff complained of aching

in her neck, but denied any weakness or arm pain.   Tr. 42, 679.   As the ALJ discussed, Plaintiff was taking ibuprofen occasionally for the pain, but not on a daily basis.   Tr. 42, 679.   Furthermore, the ALJ noted that in April 2013, Plaintiff denied taking any pain medications, and Plaintiff's gait and neurological exam were normal. Tr. 42, 751.   The ALJ found that Plaintiff's medical opinions provide conflicting results, but again, it is not the function of the Court to re-weigh or resolve conflicts in the evidence.   *Lacina*, 606 F. App'x at 525.   As a result, the Court finds that the ALJ's discussion of this medical evidence is within the discretion of the ALJ and also supports the ALJ's reasons for according little weight to Dr. Johnson's opinion.   Tr. 41-43, 45.

In addition, Plaintiff argues that the ALJ erred by not weighing Mr. DeLong's vocational evaluation.   Doc. 19 at 24.   As the Commissioner argues, Mr. DeLong "is not a medical source at all, much less an 'acceptable medical source.'"   *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 784 (11th Cir. 2016) (citing SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006)); Doc. 24 at 20 n.7.   Rather, Mr. DeLong is a non-medical source, who evaluated Plaintiff in his professional capacity as a certified vocational evaluator.   Tr. 1039-50; SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006).   "Although the ALJ should consider evidence from non-medical sources, the ALJ is not required to assign the evidence any particular weight."   *Farnsworth*, 636 F. App'x at 784-85.

Here, as the Commissioner accurately asserts, although the ALJ's decision does not specifically refer to Mr. DeLong's evaluation, the ALJ stated that he "has

considered the assessments made by 'non-medical sources.' . . ."   Doc. 24 at 20 n.7;

Tr. 45.   Plaintiff does not contest this, but rather alleges that the ALJ erred by not

weighing the opinion of Mr. DeLong.   Doc. 19 at 24.   As stated, "the ALJ is not

required to assign the [non-medical] evidence any particular weight," and Plaintiff

does not provide any contrary legal authority.   *Farnsworth*, 636 F. App'x at 784-85;

*Id.*

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment pursuant to sentence

four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 30th day of March, 2017.


CAROL MIRANDO
United States Magistrate Judge


Copies:
Counsel of record